1
2
3
4
5
6
7
8
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
9
AT SEATTLE

10  MARY KAY PEBLES, Personal            CASE NO. C12-0054-RSM
    Representative for the Estate of John H.
11  Pebles, deceased, and on behalf of MARY    ORDER OF DISMISSAL
    KAY PEBLES and the ESTATE OF
12  JOHN H. PEBLES,

13                      Plaintiff,

14          v.

15  CASEY HIAM, an individual; and CITY
    OF BELLEVUE,
16
                        Defendants.
17

18

19

20                      **I. INTRODUCTION**

21        This matter comes before the Court upon Officer Hiam's <u>unopposed</u> motion for summary

22  judgment.  *See* Dkt. #13.  For the reasons set forth below, Defendants' motion is GRANTED.

23

24

1

## II. DISCUSSION

2

3

**A. Background**

4

Plaintiff's complaint alleges that on July 7, 2009, Bellevue Police Officer Casey Hiam

5

confronted John H. Pebles, who was intoxicated and carrying a box cutter.  Dkt. #2, Ex. 1

6

("Complaint"), ¶ 3.1.  Mr. Pebles sliced his own wrist and began walking toward Officer Hiam.

7

*Id.* at ¶ 3.2.  Officer Hiam responded by firing his pistol and shooting Mr. Pebles.  Two bullets

8

entered Mr. Pebles from the front and two bullets entered Mr. Pebles from the back.  *Id.* at ¶3.3.

9

One of the bullets struck Mr. Pebles in the heart and killed him.  *Id.*

10

\*       \*       \*

11

Mary Kay Pebles, on behalf of Mr. Pebles' estate and herself, pled three causes of action.

12

Her negligence and negligent supervision claims were dismissed without prejudice upon

13

Defendants' motion for judgment on the pleadings.  *See* Dkt. #12.  The Court gave Plaintiff forty

14

five (45) days to file an amended complaint to cure the deficiencies identified in the Court's

15

order granting Defendants' motion for judgment on the pleadings.  *Id.* Plaintiff did not file an

16

amended complaint.

17

Plaintiff brought a third cause of action under 42 U.S.C. § 1983, alleging that Officer

18

Hiam violated her constitutional rights when he shot and killed John H. Pebles.  Officer Hiam

19

now moves for summary judgment on this claim.  *See* Dkt. #13.  Plaintiff did not respond to

20

Officer Hiam's motion for summary judgment.

21

\*       \*       \*

22

Evidence produced by Officer Hiam shows that Hiam was on duty the evening of July 7,

23

2009 and assigned as a patrol officer.  At approximately 11:05 p.m., Officer Hiam heard over the

24

1   police radio a call from dispatch requesting a back-up officer for a disturbance at the Milano

2   Apartments on NE 8th Street.  Hiam got into his patrol car and read the notes in his mobile data

3   computer.  He learned that the suspect, John Pebles, was a white male, 60 years old, 5 feet 8

4   inches tall, and wearing a black leather jacket and blue jeans.  Hiam also learned that the caller,

5   Mary Kay Pebles, stated that Mr. Pebles was throwing things and that he had threatened to kill

6   her.  Dispatch advised that it was unknown whether Mr. Pebles had any weapons.

7        Officer Neese announced over the radio that he had already determined there was

8   probable cause to arrest Mr. Pebles for "domestic violence, felony harassment, threats to kill."

9   Hiam Decl., ¶ 10 (Dkt. #18).   Dispatch next advised that Mr. Pebles had "busted the door

10  down," but that Ms. Pebles did not know where he had gone.  *Id.* at ¶ 11.

11       Hiam drove toward the address.  As he was stopping at the apartment complex, dispatch

12  advised that other witnesses were now reporting Mr. Pebles was on foot at the Shell gas station

13  across the street.  Officer Hiam drove a short distance west on NE 8th and almost immediately

14  saw a man matching Mr. Pebles' description walking westbound on the sidewalk.  Hiam stopped

15  his patrol car in the center turn lane, illuminated Mr. Pebles with the car's spotlight, and exited

16  his vehicle.  Mr. Pebles turned and looked at Hiam as he was exiting the patrol car.  He yelled

17  something unintelligible and Officer Hiam commanded him loudly to stop.

18       In response, Mr. Pebles drew a large utility knife from his jacket pocket.  Officer Hiam

19  recognized the knife as a serious threat.  Hiam had been trained that any knife is potentially

20  lethal because it can be used to slit a throat, slash open arties, or puncture vital organs.  He had

21  also learned that a police officer's ballistic vest will not stop a knife and that a suspect armed

22  with a knife can sprint a significant distance and stab an officer more quickly than the officer

23  might react and fire his or her pistol.

24

1      When he saw the knife, Hiam drew his pistol.  He held his pistol in the "sul" [1] position,

2  close to his body, around the middle of his stomach, with the barrel pointed straight down at the

3  ground between his feet.  He kept his finger off the trigger and along the frame of the pistol.

4      As Hiam drew his pistol, Mr. Pebles pulled up his sleeve and violently slashed his left

5  wrist with the knife three times.  Officer Hiam yelled several times, "STOP, drop the knife, get

6  on the ground!"  Hiam Decl., ¶ 17.

7      Officer Hiam then transmitted over the radio that Mr. Pebles had a knife and was cutting

8  his wrist.  Mr. Pebles began briskly walking away, while continuing to slash his wrists, toward a

9  convenience store and Shell station.  Officer Hiam followed and continued commanding loudly,

10  "STOP, drop the knife!"  *Id.* at ¶ 22.  Mr. Pebles did not obey and as he approached the

11  driveway to the Lucky Market, he started to run.

12      Officer Hiam ran after Mr. Pebles and started crossing in front of cars stopped in the two

13  eastbound lanes of NE 8th.   Officer Hiam felt that Mr. Pebles now posed a threat to employees

14  and customers in the convenience store.  When Mr. Pebles was in the parking lot near the corner

15  of the store and Officer Hiam was approximately 35 feet away, Mr. Pebles suddenly turned to

16  face Hiam.   Hiam again yelled at Mr. Pebles to drop the knife and pointed his pistol at Mr.

17  Pebles.

18      Instead of dropping the knife, Mr. Pebles began walking aggressively toward Officer

19  Hiam, while moving from side to side like a boxer.  He held the knife in his extended right hand,

20  pointing it directly at Officer Hiam while closing the distance between them.  When he was

21  about 20-25 feet away, Mr. Pebles started to run towards Hiam with the knife extended and

22  pointed at him, like he was going to stab him.

23

---

24  [1] "Sul" is Portuguese for "south."  Hiam Decl., ¶17.

1    When Mr. Pebles got within 12 feet, Officer Hiam began firing at Mr. Pebles' center of

2    mass while pedaling backward and laterally to avoid the knife.  In the span of approximately one

3    second, Officer Hiam fired five shots in rapid succession until Mr. Pebles stopped and fell to the

4    ground less than five feet away.  At the time he fired his pistol, Officer Hiam believed his life

5    was in imminent peril.  Hiam Decl., ¶ 32.  He did not see any other options available.  Officer

6    Hiam did not shoot while Mr. Pebles was turned away.

7    Officer Hiam's account is corroborated by eyewitnesses, whose 911 call also documents

8    how rapidly events unfolded.  *See* Decl. of Records Custodian for NORCOM, Ex. "COB

9    101607" (Mr. Walden's 911 call) (Dkt. #15).

10    Bellevue Police Officer Joe Engman, an expert in defensive tactics and use of force, has

11    reviewed Officer Hiam's actions and concluded that they were fully appropriate and complied

12    with standard police practices.  *See* Engman Decl. (Dkt. #16).  Engman concluded that, upon

13    arrival at the scene, it was appropriate for Officer Hiam to order Mr. Pebles to stop in order to

14    detain him until additional officers arrived.  Engman also found that Mr. Pebles' large utility

15    knife was a serious threat to Officer Hiam and that it was appropriate for Officer Hiam to draw

16    his pistol when he saw that Mr. Pebles had a knife.  Further, Engman concluded that Officer

17    Hiam's decision to shoot as Mr. Pebles charged at him with the knife, and to aim for Mr. Pebles'

18    center of mass, was correct.  Finally, Engman stated that it was standard police practice to

19    continue firing until the threat is stopped, once the decision to begin firing is made.  Officers are

20    taught to fire continuously until the threat stops (until the suspect falls to the ground), instead of

21    pausing to evaluate what effect, if any, each round has had on the suspect.

22    Engman evaluated the fact that Mr. Pebles sustained gunshot wounds to the back.  He

23    stated that gunshot entrance wounds to the back do not mean that an officer continued firing after

24

1   the threat stopped.  Engman noted that the arms and torso are flexible, so it is possible for a

2   suspect to present his back to an officer while attacking.  In addition, the relative position of the

3   suspect's torso can change more quickly than an officer can perceive the cessation of the deadly

4   threat and make the decision to stop shooting.   Engman stated in his declaration that it is not

5   uncommon for suspects shot by police officers to have one or more entrance wounds on the

6   back.

7        In this case, Engman found that Mr. Pebles was hit by four of the five rounds Officer

8   Hiam fired.  One round entered the front of his right thigh and one entered the front of his lower

9   abdomen.  There was also an entrance wound near the left armpit and another to the back of the

10   right shoulder area.  Engman concluded that these two wounds to the back could have been

11   sustained while Mr. Pebles was actively moving toward Officer Hiam, if Mr. Pebles simply

12   twisted his torso to the left or the right.  Engman stated that, because all of the shots were fired

13   within approximately one second, it would be unrealistic to conclude that any of the shots were

14   preceded by any conscious thought other than the initial, proper decision to start shooting.

15   **B. Negligence Claims**

16        In its previous order, the Court dismissed Plaintiff's first two causes of action because

17   Plaintiff's complaint failed to state a claim for which relief could be granted under the standard

18   set forth in *Iqbal*[2] and *Twombly*[3].   The Court accordingly dismissed Plaintiff's first and second

19   causes of action with leave to amend within forty five days of the date of its Order.  The Court

20   was clear in its previous Order: "If an amended complaint is not timely filed, the Court will

21   dismiss Plaintiff's first and second causes of action with prejudice."  Dkt. #12, p. 5.  More than

22   forty five days have passed since the Court entered its order dismissing Plaintiff's first two

23

[2] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

24   [3] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

1    causes of action.  Accordingly, Plaintiff's negligence claim against Officer Hiam and Plaintiff's

2    negligent supervision claim against the City of Bellevue are hereby dismissed with prejudice.

3    **C. Section 1983 Claims**

4          Officer Hiam now moves for summary judgment on Plaintiff's remaining Section 1983

5    claim.  *See* Dkt. #13.  Officer Hiam argues that Plaintiff's claim must fail because Hiam's

6    actions with respect to the fatal shooting of Mr. Pebles were reasonable under the circumstances

7    and did not constitute excessive force in violation of the Fourth Amendment to the United States

8    Constitution and because, in any case, he is entitled to qualified immunity.  Plaintiff did not

9    respond to Hiam's motion.

10        1.  Standard

11         Under this Court's local rules, "[i]f a party fails to file papers in opposition to a motion,

12   such failure may be considered by the court as an admission that the motion has merit."  Local

13   Rule CR 7(b)(2).  Notwithstanding this rule, an unopposed motion for summary judgment

14   presents a special case.  A district court may not grant an unopposed motion for summary

15   judgment solely because the opposing party has failed to file an opposition. *See Cristobal v.*

16   *Siegel*, 26 F.3d 1488, 1494-1495 & n.4 (9th Cir. 1994). *See also* Fed. R. Civ. P. 56, advisory

17   committee note of 2010 ("summary judgment cannot be granted by default even if there is a

18   complete failure to respond to the motion…").  The Court may only grant summary judgment if

19   "the motion and supporting materials . . . show that the movant is entitled to it."  Fed. R. Civ. P.

20   56(e).

21         Summary judgment is appropriate where "the movant shows that there is no genuine

22   dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

23   R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247 (1986).  In ruling on

24   summary judgment, a court does not weigh evidence to determine the truth of the matter, but

1  "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d

2  547, 549 (9th Cir. 1994) (*citing F.D.I.C. v. O'Melveny & Myers*, 969 F.2d 744, 747 (9th Cir.

3  1992), *rev'd on other grounds*, 512 U.S. 79 (1994)).  Material facts are those which might affect

4  the outcome of the suit under governing law. *Anderson,* 477 U.S. at 248.

5          The Court must draw all reasonable inferences in favor of the non-moving party. *See*

6  *F.D.I.C. v. O'Melveny & Myers*, 969 F.2d at 747.  However, the nonmoving party must make a

7  "sufficient showing on an essential element of her case with respect to which she has the burden

8  of proof" to survive summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "If

9  a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c),

10  the court may . . . consider the fact undisputed for purposes of the motion." Fed. R. Civ. P.

11  56(e)(2).  Whether to consider the fact undisputed for the purposes of the motion is at the court's

12  discretion and the court "may choose not to consider the fact as undisputed, particularly if the

13  court knows of record materials that should be grounds for genuine dispute." Fed. R. Civ. P. 56,

14  advisory committee note of 2010.  On the other hand, "[t]he mere existence of a scintilla of

15  evidence in support of the plaintiff's position will be insufficient; there must be evidence on

16  which the jury could reasonably find for the plaintiff." *Anderson,* 477 U.S. at 252.

17      2.  <u>Analysis</u>

18          Officer Hiam is entitled to summary judgment on Plaintiff's remaining Section 1983

19  claim.  Claims that police officers have used excessive force are analyzed under the Fourth

20  Amendment's "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 395

21  (1989).  The "reasonableness" of a particular use of force must be judged from the perspective of

22  a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. *Id.* (citing *Terry*

23  *v. Ohio,* 392 U.S. 1,  20–22 (1968)). The Court is required to pay "careful attention to the facts

24  and circumstances of each particular case, including the severity of the crime at issue, whether

1   the suspect poses an immediate threat to the safety of the officers or others, and whether he is

2   actively resisting arrest or attempting to evade arrest by flight." *Id.*

3          Using this standard, no reasonable jury could find that Officer Hiam's use of lethal force

4   was unreasonable.  Officer Hiam had been informed that there was probable cause to arrest Mr.

5   Pebles for felony harassment with threats to kill.  This is a serious and dangerous crime.  Second,

6   Mr. Pebles posed an immediate threat to the safe of Officer Hiam because he attacked Officer

7   Hiam with a knife.  Mr. Pebles likely also posed an immediate threat to the safety of others

8   because the incident occurred in the parking lot of a gas station, near a convenience store, where

9   others were present.  Finally, prior to attacking Officer Hiam, Mr. Pebles had been attempting to

10  evade arrest by flight.

11         Plaintiff has produced no evidence that contradicts the evidence produced by Officer

12  Hiam and has failed to support any element of her claim of excessive force.  Accordingly,

13  Officer Hiam is entitled to summary judgment on Plaintiff's remaining Section 1983 claim.

14  Because the Court has determined that Officer Hiam's actions were reasonable, it declines to

15  address the qualified immunity arguments raised in Officer Hiam's briefing.

16                                      **III. CONCLUSION**

17         Having reviewed Officer's Hiam's motion (Dkt. #13), all declarations and exhibits

18  attached thereto, Officer Hiam's reply, and the remainder of the record, the Court hereby finds

19  and orders:

20         (1) Plaintiff's first two causes of action are hereby dismissed WITH PREJUDICE in

21              accordance with the Court's previous order on Defendants' motion for judgment on

22              the pleadings.  *See* Dkt. #12.

23

24

ORDER OF DISMISSAL - 9

1    (2) Officer Hiam's motion for summary judgment (Dkt. #13) is hereby GRANTED.

2        Plaintiff's third cause of action under Section 1983 is likewise hereby dismissed.

3    (3) Having dismissed each of Plaintiff's claims, this action is hereby DISMISSED with

4        prejudice in its entirety.  The Clerk is directed to enter judgment in favor of the

5        Defendants.

6    (4) The Clerk of the Court is directed to forward a copy of this Order to all counsel of

7        record.

8

9    Dated August 29, 2012.

10

11

12

13                                          RICARDO S. MARTINEZ
                                            UNITED STATES DISTRICT JUDGE
14

15

16

17

18

19

20

21

22

23

24